[Cite as *In re M.P.*, 2013-Ohio-4171.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: M.P.

C.A. No. 26765

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 11-05-0366

DECISION AND JOURNAL ENTRY

Dated: September 25, 2013

CARR, Judge.

{¶1} Appellant, Mary L. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of a maternal aunt. This Court affirms.

I.

{¶2} Mother is the natural mother of M.P., born July 17, 2006. On May 20, 2011, Akron Police were contacted by a homeless shelter because Mother had walked there with M.P. in the middle of the night and was speaking and behaving erratically. Because Mother required mental health treatment and refused to provide authorities with the name of a caregiver for the child, M.P. was removed from her custody pursuant to Juv.R. 6. The child was later adjudicated a dependent child and placed in the temporary custody of Summit County Children Services Board ("CSB").

{¶3} Mother was admitted to a mental health facility, where she received emergency psychiatric treatment for two days. Upon her discharge, the hospital mental health professionals advised her to follow up with regular psychiatric medication management and counseling. Consequently, the primary reunification goal of the case plan required Mother to obtain a full psychiatric assessment and follow up with recommended treatment for her mental illness. During the next 11 months, however, Mother did not follow up with a new assessment or any mental health treatment and continued to behave erratically around M.P. Despite continual encouragement from the caseworker and the guardian ad litem, Mother insisted that she did not need mental health treatment and refused to comply with the case plan.

{¶4} On May 8, 2012, CSB filed a motion to change the disposition of the child from temporary custody with the agency to legal custody with a maternal aunt. M.P. had been living in the aunt's home during this case and had developed a loving and stable relationship with her. The aunt was meeting all of M.P.'s needs, including several medical, dental, and educational needs that had not been addressed by Mother.

{¶5} Shortly after CSB filed the legal custody motion, Mother obtained a psychiatric assessment. The psychiatrist's written report was provided to CSB but Mother's counsel apparently did not see the report prior to the legal custody hearing. During the hearing before the magistrate, over the objections of Mother's counsel, CSB was permitted to briefly question the caseworker about the contents of the psychiatrist's report. Specifically, the caseworker testified that Mother had been diagnosed with psychotic disorder and was advised to see a psychiatrist and take medication. The caseworker further testified, from her own knowledge, that Mother had not been taking psychiatric medication or engaging in consistent mental health counseling.

{¶6} In support of the agency's motion, the caseworker explained that M.P. had "flourished" in the aunt's home. She described some of her observations of M.P. in the aunt's home and opined that the child and aunt were bonded and loved to spend time together. M.P. was doing well in school, was involved in extracurricular activities, and engaged in many activities with her extended family. M.P. had also told the caseworker that she wanted to continue living in the aunt's home.

{¶7} Following the hearing, the magistrate decided that M.P. should be placed in the legal custody of the aunt. Mother filed objections to the magistrate's decision, including that the magistrate erred in allowing the caseworker to testify about the contents of the psychiatric assessment. The trial court overruled Mother's objections and placed M.P. in the legal custody of the aunt. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE COURT ERRED IN ADMITTING EVIDENCE REGARDING [MOTHER'S] MENTAL HEALTH RECORDS AFTER [CSB] FAILED TO PROVIDE THEM IN DISCOVERY.

{¶8} Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a non-parent is based solely on the best interest of the child. *In re D.R.*, 9th Dist. Summit No. 21218, 2003-Ohio-2852, ¶ 17; *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus (holding that an adjudication of abuse, dependency, or neglect is an implicit determination of the parent's unsuitability). The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of discretion. *In re M.S.*, 9th Dist.

Summit No. 22158, 2005-Ohio-10, ¶ 11. Mother does not argue that the trial court abused its discretion by concluding that legal custody to the aunt was in M.P.'s best interest.

{¶9} Mother's sole challenge to the trial court's legal custody decision is that the trial court erred in considering the caseworker's testimony about the contents of Mother's psychiatric assessment. To demonstrate reversible error, Mother must demonstrate not only that the trial court erred by admitting the evidence but also that she suffered prejudice as a result of that error. *Lowry v. Lowry*, 48 Ohio App.3d 184, 190 (4th Dist.1988), citing *Gries Sports Ents., Inc. v. Cleveland Browns Football Co., Inc.*, 26 Ohio St.3d 15, 28 (1986). "A prejudicial error is defined as one which affects or presumptively affects the final results of the trial." *Miller v. Miller*, 5th Dist. Coshocton No. 06CA3, 2006-Ohio-7019, ¶ 12.

{¶10} Although Mother argues that the trial court erred in admitting evidence about the contents of the report, she has not argued or demonstrated that she suffered any prejudice from this evidence. To begin with, minimal evidence about the assessment was before the trial court. The written report itself was not admitted and the caseworker's only testimony about its contents was that Mother had been diagnosed with psychotic disorder and was advised to see a psychiatrist for medication management. The diagnosis was not explained in any detail.

{¶11} There was ample other evidence in the record to support the trial court's conclusion that Mother had a mental illness that impacted her ability to parent M.P. and that she had not complied with the requirements of the case plan that she receive ongoing treatment. CSB filed this case because Mother was taken by ambulance for emergency mental health treatment and refused to give the police the name of a suitable caregiver for M.P. Mother received in-patient psychiatric treatment at St. Thomas Hospital for two days. Upon her release,

she was advised to continue medication management and counseling with mental health professionals. She did not follow up with the recommended treatment, however.

{¶12} The primary reunification requirement throughout this case was for Mother to address her mental health problems by first obtaining a full psychiatric assessment and then engaging in ongoing mental health treatment. The caseworker testified from her own knowledge that Mother did not obtain the psychiatric assessment and begin working on the goals of the case plan until May 18, 2012, after CSB filed the legal custody motion and nearly one year after M.P. had been removed from her custody. Both the caseworker and the guardian ad litem testified that, during the first year of the case plan, Mother continued to deny that she needed mental health treatment, yet they each observed her exhibit confrontational and erratic behavior.

{¶13} The caseworker and the guardian ad litem both testified that Mother became upset and started yelling at them whenever they tried to talk to her about the goals of the case plan. The caseworker testified that she no longer visited Mother at her home because she was concerned that Mother's confrontational behavior posed a threat to her safety. The guardian ad litem explained that Mother could be pleasant with her and M.P. at times but she could also be very volatile and that Mother's mood could swing "in an instant." She expressed concern that the unpredictability of Mother's behavior was unhealthy for M.P. because she never knew what to expect.

{¶14} The caseworker and the aunt also testified that Mother refused to cooperate with her and other members of Mother's extended family. M.P. had not known much of her extended family prior to this case because Mother wanted nothing to do with them. During the past year, the aunt had involved M.P. in many family social activities, which M.P. enjoyed. During the aunt's testimony, while she explained that Mother was her family and she wanted to work with

her, the record reflects repeated outbursts by Mother about not wanting to have a relationship with her extended family.

{¶15} The minimal evidence admitted about the contents of the psychiatric assessment added little to the other evidence about Mother's unstable mental health and her refusal to obtain consistent treatment during the case planning period. Because the trial court had other, substantial evidence before it to demonstrate that Mother suffered from mental illness, Mother was not prejudiced by the caseworker's brief testimony about the contents of the psychiatric assessment. *See In re N.J.*, 9th Dist. No. Lorain 12CA010221, 2012-Ohio-5429, ¶ 10; *In re E.B.*, 2d Dist. Greene Nos. 2011 CA 13 & 2011 CA 14, 2012-Ohio-2231, ¶ 27. Consequently, Mother's assignment of error is overruled.

### III.

{¶16} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

BARBARA J. ROGACHESFSKY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.